IN THE UNITED STATED DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JENNIFER BORCHEK, and<br>LAUREN SKURKIS, individually and on<br>behalf of all others similarly situated,<br><br>                            Plaintiffs,<br><br>    v.<br><br>BAYER HEALTHCARE LLC, and<br>ELANCO ANIMAL HEALTH, INC.,<br><br>                            Defendants. | Case No. 1:21-cv-2099<br><br>CLASS ACTION ALLEGED<br><br>JURY TRIAL DEMANDED |

COMPLAINT

      COME NOW Plaintiffs Jennifer Borchek and Lauren Skurkis, individually and behalf of all others similarly situated (collectively, "Plaintiffs"), by and through their undersigned attorneys, for their Complaint against Bayer HealthCare LLC and Elanco Animal Health, Inc., (together, "Defendants"), and state to the Court as follows:

      1.      Seresto flea collars were advertised to pet-owning consumers and labeled as a safe way to prevent flea and ticks for dogs and cats.

      2.      But Seresto flea collars were not safe: they have been linked to almost 1,700 pet deaths, over 75,000 incidents involving pet harm, and nearly 1,000 incidents involving human harm. Despite this, their makers continued to tout their safety and conceal their risks.

      3.      Because Plaintiffs purchased a worthless product, they have suffered an economic loss so the makers of Seresto flea collars could reap ill-gotten profits.

1

## TOLLING OF THE STATUTE OF LIMITATIONS

4. Any applicable statute of limitations has been tolled by the deceptive conduct alleged herein. Through no fault or lack of due diligence, Plaintiffs were deceived regarding the risks of Seresto flea collars and could not reasonably discover those risks on their own.

5. Plaintiffs' statute of limitation accrued upon discovery that Seresto flea collars presented serious safety risks. These risks were not disclosed to Plaintiffs prior to purchase, and Plaintiffs could not have discovered these risks through reasonably diligent investigation.

6. Defendants actively concealed the fact that Seresto flea collars posed serious safety risks to pets and consumers. Defendants had actual knowledge that Seresto flea collars were not safe. But in spite of this, Defendants fraudulently concealed this information from consumers like Plaintiffs.

7. Defendants are estopped from relying on any statutes of limitation as a defense to this action because they were under a continuous duty to disclose to Plaintiffs the true character, quality, and nature of Seresto flea collars.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this controversy under 28 U.S.C. § 1332(d) as this case alleges a class action claim in which the matter in controversy exceeds $5,000,000 and most of the class members are citizens of a state different from the citizenship of the defendants.

9. Venue in this district is proper pursuant to 28 U.S.C. § 1391(b) and (c) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in the Northern District of this Court and Defendants are subject to personal jurisdiction in the Northern District of this Court. Pursuant to L.R. 5.1, divisional venue is proper in the Eastern Division of this Court because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in that Division.

## PARTIES

10. Plaintiff Jennifer Borchek is a resident and citizen of the State of Illinois, where she purchased a Seresto flea collar for her dog at PetSmart on September 18, 2020. Upon learning of the serious safety risks posed by Seresto flea collars, she removed the product. Since that time, she has monitored her dog for serious medical problems.

11. Plaintiff Lauren Skurkis is a resident and citizen of the State of Illinois, where she purchased Seresto flea collars for her cat in or around April and May 2020. Upon learning of the serious safety risks posed by Seresto flea collars, she removed the product. Since that time, she has monitored her cat for serious medical problems.

12. Bayer HealthCare LLC is a Delaware corporation limited liability company with its headquarters in New Jersey. Upon information and belief, Bayer HealthCare LLC is a citizen of Delaware and New Jersey.

13. Elanco Animal Health, Inc., is an Indiana corporation with its headquarters in Indiana. Elanco Animal Health, Inc., is a citizen of Indiana. Elanco Animal Health, Inc., purchased the Seresto brand in 2020 from Bayer HealthCare LLC.

GENERAL ALLEGATIONS

14. Seresto flea collars were advertised and sold—and continue to be advertised and sold—as a safe means to prevent fleas, ticks, and lice for cats and dogs.

15. Seresto flea collars were marketed as a long-term option for flea and tick prevention that saves the consumer from applying monthly topical or oral treatments.

16. Seresto flea collars were developed by the Animal Health Division of Bayer HealthCare LLC in 2012 and received approval from the United States Environmental Protection Agency ("EPA"). *See* U.S. Env't Protection Agency, https://www3.epa.gov/pesticides/chem_search/ppls/011556-00155-20140403.pdf (last accessed Apr. 16, 2021) (attached as Exhibit A). They work by combining two pesticides, imidacloprid and flumethrin, which Bayer found made them more toxic against fleas.

17. The active ingredient dosage of imidacloprid and flumethrin was advertised as a low dosage or a low concentration.

18. The packaging and labeling for Seresto flea collars and the marketing, advertising, and promotional materials for Seresto flea collars contained no disclaimer warning that the risks of toxicity may be so great that they could be responsible for incidents involving harm to pets and humans as well as pet deaths, as demonstrated below:[1]

---

[1] Seresto Flea and Tick Collar for Dogs, Amazon, https://www.amazon.com/Seresto-flea-collar-8-month-prevention/dp/B00B8CG602 (last accessed Apr. 16, 2021) (showing Bayer labeling). *See also* Product Label for Bayer Seresto Collar for Dogs, https://fleascience.com/wp-content/uploads/2015/11/Product-Label-for-Bayer-Seresto-Collar-for-Dogs.pdf (last accessed Apr. 16, 2021) (attached as Exhibit B).



19. The packaging and labeling of Seresto flea collars, instead, only warned of slight hair loss or mild skin reactions for pets due to the mechanical irritation from wearing the collar; dermatitis, inflammation, eczema, or lesions in "very rare cases"; and other "individual sensitivities" in pets and "sensitivity reactions" in humans.

20. Seresto flea collars did not contain any warning that the product posed a risk of seizures, gastrointestinal problems, and cancers in pets and seizures, skin conditions, and neurological conditions in humans.

21. As a result, when Plaintiffs purchased and used Seresto flea collars, they reasonably believed—and did believe—Seresto flea collars did not pose a risk of severe harm to pets or humans.

22. Notwithstanding the packaging, labeling, advertising, marketing, and promotional materials, Seresto flea collars do pose a threat of severe harm to pets and humans. Seresto flea collars have been linked to significant harm to pets and their human owners.

23. EPA documents reveal the agency has received reports connecting Seresto flea collars to 1,698 animal deaths.

24. Additionally, Seresto flea collars have resulted in over 73,000 other incidents involving harm to pets. Of these, 45,552 were classified by the EPA as being moderate, major, or fatal incidents.

25. Seresto flea collars have caused neurological damage and seizures in pets.

26. Seresto flea collars have caused cancer in pets.

27. Humans have been harmed by Seresto flea collars, as well. Between 2013 and 2018, the EPA received reports of 907 incidents, including 19 severe incidents. Of those, eight people had dermal symptoms, and seven had neurological symptoms, including numbness and headaches.

28. In one incident, a twelve-year-old boy who slept in bed with a dog wearing a Seresto flea collar was hospitalized due to seizures and vomiting. In another, a 67-year-old woman who slept in a bed with a dog wearing a collar reported having heart arrhythmia and fatigue. *See* Popular Flea Collar Linked to Almost 1,700 Pet Deaths. The EPA Has Issued No Warning., USA Today (Mar. 2, 2020), www.usatoday.com/story/news/investigations/2021/03/02/seresto-dog-cat-collars-foundharm-pets-humans-epa-records-show/4574753001/).

29. Defendants had knowledge of these risks from EPA incident reports, online reviews, and other media reports.

30. When Defendant Elanco purchased the Seresto brand in 2020, it would have discovered the risks posed by Seresto flea collars when performing its due diligence.

31. But the labeling, packaging, advertising, merchandising, and promotional materials for Seresto flea collars do not mention these risks. As a result, pet-owning consumers, including Plaintiffs, have paid—and continue to pay—for products that pose significant, undisclosed risks to them and their pets.

32. More than 25 million Seresto flea collars have been sold since 2012.

33. The Manufacturer Suggested Retail Price for a single Seresto flea collar is roughly $60.

34. In 2020 alone, Defendant Elanco Animal Health, Inc., received $84 million in revenue from Seresto flea collars.

35. These are profits Defendants would not have received had the risks of Seresto flea collars been fully disclosed to pet-owning consumers, including Plaintiffs.

36. And in spite of evidence that Seresto flea collars pose significant health risks to pets and humans, Defendants have refused to recall their product. Instead, they have doubled down, claiming there is no causal evidence sufficient to support a recall of their product. Defendants thus continue to market Seresto flea collars as a safe and effective way to protect pets against fleas and ticks.

## CLASS ACTION ALLEGATIONS

37. Plaintiffs Jennifer Borchek and Lauren Skurkis bring this case as a class action pursuant to Fed. R. Civ. P. 23 on their own behalf and as class representatives on behalf of the following:

> Persons who purchased a Seresto flea collar in Illinois within the applicable statute of limitations.

38. Plaintiffs' claims satisfy the numerosity, commonality, typicality, adequacy, and superiority requirements of a class action pursuant to Fed. R. Civ. P. 23.

39. This class numbers in the thousands of persons. As a result, joinder of all class members in a single action is impracticable. Class members may be informed of the pendency of this class action through a variety of means, including but not limited to, direct mail, email, and website posting.

40. There are questions of fact and law common to the class that, under Illinois law, predominate over any question affecting only individual members. Those questions include, without limitation, the following:

   a) whether Plaintiffs purchased a Seresto flea collar;

   b) whether the advertising, merchandising, and promotional materials directed to Plaintiffs were deceptive regarding the safety risks posed by Seresto;

   c) whether Defendants made representations regarding the safety of Seresto flea collars;

   d) whether Defendants omitted material information regarding the safety of their products;

   e) whether Defendants were unjustly enriched by sales of Seresto flea collars.

41. The questions set forth above predominate over any questions affecting only individual persons concerning sales of Seresto flea collars in Illinois, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of Plaintiffs' claims.

42. Plaintiffs' claims are typical of those of the class in that the class members uniformly purchased Seresto flea collars and were subjected to Defendants' uniform merchandising materials and representations at the time of purchase.

43. A class action is the appropriate method for the fair and efficient adjudication of this controversy. The presentation of separate actions by individual class members could create a risk of inconsistent adjudications, establish incompatible standards of conduct for Defendants, and/or substantially impair or impede the ability of class members to protect their interests.

44. In addition, it would be impracticable and undesirable for each member of the class who suffered an economic loss to bring a separate action. The maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all class members.

45. Plaintiffs Jennifer Borchek and Lauren Skurkis are adequate representatives of the class because they are members of the class and their interests do not conflict with the interests of the class they seek to represent. The interests of the members of the class will be fairly and adequately protected by Plaintiffs and their undersigned counsel. Counsel are experienced in the litigation of civil matters, including the prosecution of consumer protection class action cases.

46. Membership in the class may be readily ascertainable. Records from Defendants and the retailers that sold Seresto flea collars, particularly those that did so online (*e.g.,* Amazon.com, Chewy.com, PetCo.com, Walmart.com, etc.).

COUNT I
VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND
DECEPTIVE BUSINESS PRACTICES ACT

47. Plaintiffs re-allege the allegations set forth in paragraphs 1–45 as though set forth fully herein.

48. The Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.*, prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act' … in the conduct of any trade or commerce." 815 ILCS 505/2.

49. Seresto flea collars were "merchandise" within the meaning of 815 ILCS 505/1(b).

50. Defendants and Plaintiffs are "person[s]" within the meaning of 815 ILCS 505/1(c).

51. Plaintiffs are "consumers" within the meaning of 815 ILCS 505/1(e).

52. Defendants were engaged in "trade" or "commerce" within the meaning of 815 ILCS 505/1(f).

53. Defendants distributed, marketed, advertised, labeled, and/or sold Seresto flea collars to consumers in Illinois.

54. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Illinois Consumer Fraud and Deceptive Business Practices

Act by intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels and packaging of Seresto flea collars, including that: such flea collars were inherently defective; unreasonably dangerous; not fit to be used for their intended purpose; contained unsafe levels of imidacloprid and flumethrin; and/or caused serious health problems, including seizures and cancer.

55. Defendants' misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Seresto flea collars were disseminated to Plaintiffs in a uniform manner.

56. Each of Defendants' false representations and omissions are representations and omissions of material fact because Plaintiffs, as reasonable consumers, would have acted differently had they been aware of these facts, and because the facts concerned the type of information upon which Plaintiffs would have expected to rely in making their decisions to purchase Seresto flea collars.

57. Defendants intended Plaintiffs to rely on their false representations and omissions of material fact.

58. Plaintiffs did in fact rely on Defendants' false misrepresentations and omissions of material facts regarding Seresto flea collars. Had Defendants not engaged in the deceptive acts and practices alleged herein, Plaintiffs would not have purchased Seresto flea collars, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

59. As a result of Defendants' false representations and omissions of material fact, Defendants have engaged in, and continue to engage in, deception in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act.

60. Plaintiffs have suffered damages as a direct and proximate result of Defendants' deceptive conduct and/or unfair acts and practices.

WHEREFORE, Plaintiffs demand judgment against Defendants and pray this Court:

a) Certify the Class as set forth above pursuant to Fed. R. Civ. P. 23;

b) Designate Plaintiffs Jennifer Borchek and Lauren Skurkis as representatives of the Class, and their undersigned counsel as Class Counsel;

c) Enter judgment in favor of Plaintiffs and against Defendants;

d) Enjoin Defendants' unlawful conduct alleged herein and order disgorgement of their ill-gotten gains;

e) Enter an award of damages that fairly and reasonably compensates Plaintiffs for their out-of-pocket losses;

f) Enter an award of pre- and post-judgment interest as provided by law;

g) Enter an award of punitive damages;

h) Enter an award for attorney's fees and costs; and

i) Provide such other relief as the Court deems necessary or proper.

### COUNT II
### UNJUST ENRICHMENT

61. Plaintiffs re-allege the allegations set forth in paragraphs 1–45 as though set forth fully herein.

62. Plaintiffs conferred a benefit on Defendants in the form of payment of monies to purchase worthless Seresto flea collars, or were otherwise in privity with Defendants through said transactions.

63. In exchange for their payment of the purchase price of Seresto flea collars, Plaintiffs received Seresto flea collars, which Defendants did not disclose such flea collars were inherently defective; unreasonably dangerous; not fit to be used for their intended purpose; contained unsafe levels of imidacloprid and flumethrin; and/or caused serious health problems, including seizures and cancer. Accordingly, Plaintiffs conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

64. Defendants accepted and retained these benefits from Plaintiffs. Defendants knowingly benefited from their unjust conduct—at Plaintiffs' expense—by continuing the manufacture, merchandize, and sell a product they knew were inherently defective; unreasonably dangerous; not fit to be used for their intended purpose; contained unsafe levels of imidacloprid and flumethrin; and/or caused serious health problems, including seizures and cancer.

65. It violates the principles of justice, equity, and good conscience for Defendants to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning Seresto flea collars from Plaintiffs who would not have purchased Seresto flea collars at all but for Defendants' misrepresentations and omissions.

66. Equity cannot in good conscience permit Defendants to retain the benefits derived from Plaintiffs through their unjust and unlawful acts without paying for the value thereof, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

67. Plaintiffs recognize they may not double-recover their economic losses. Accordingly, should Plaintiffs prevail on Count I herein, then they would not be entitled to recover under this Count III. However, should Plaintiffs not prevail on their Count I, Plaintiffs

do not otherwise have an adequate remedy at law, nor is there an express contract governing this dispute.

WHEREFORE, Plaintiffs demand judgment against Defendants and pray this Court:

a) Certify the Class as set forth above pursuant to Fed. R. Civ. P. 23;

b) Designate Plaintiffs Jennifer Borchek and Lauren Skurkis as representatives of the Class, and their undersigned counsel as Class Counsel;

c) Order Defendants to disgorge the value of their ill-gotten gains to Plaintiffs;

d) Award Plaintiffs restitution in addition to their reasonable attorney's fees and costs;

e) Enter an award of pre- and post-judgment interest as provided by law; and

f) Provide such other relief as the Court deems just and appropriate.

### DEMAND FOR JURY TRIAL

Plaintiffs hereby request a trial by jury of all issues so triable.

Respectfully submitted,

LEAR WERTS LLP

/s/ Todd C. Werts

Bradford B. Lear, Ill. Bar No. 6276612
Todd C. Werts, Mo. Bar No. 53204
Anthony J. Meyer, Mo. Bar No. 71238
103 Ripley Street
Columbia, MO 65201
Telephone: 573-875-1991
Facsimile: 573-279-0024
Email: lear@learwerts.com
Email: werts@learwerts.com
Email: meyer@learwerts.com

ATTORNEYS FOR PLAINTIFFS